IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

RAYMOND GREGGS            )
                         )
v.                       )      No. 1:22-cv-0041
                         )
KILOLO KIJAKAZI          )
Acting Commissioner of   )
Social Security          )

**To:    The Honorable William L. Campbell, Jr.,  United States District Judge**

**REPORT AND RECOMMENDATION**

Plaintiff Raymond Greggs filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying him disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and supplemental security income ("SSI") under Title XVI of the Act. The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 11),[1] to which Defendant SSA has responded (Docket No. 15). Plaintiff has also filed a reply to the SSA's response. (Docket No. 16.) This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 5.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 11) be GRANTED, the SSA's decision be REVERSED, and this matter be REMANDED for further proceedings.

---

[1] Plaintiff's motion includes an embedded supporting memorandum of law rather than a separately filed one as required by Local Rule 7.01(a)(2).

# I.     INTRODUCTION

Plaintiff proactively filed an application for DIB on November 1, 2019 and for SSI on January 11, 2021. (Transcript of the Administrative Record (Docket No. 8) at 29, 226–27, 242–62.)[2] In these applications, Plaintiff asserted that, as of the alleged onset date of August 28, 2019, he was disabled and unable to work due to masses in both lungs, chronic obstructive pulmonary disease ("COPD"), colon infection, obstructive sleep apnea ("OSA"), depression, and anxiety. (AR 243, 285.) The claims were denied initially on July 16, 2020 and upon reconsideration on December 30, 2020. (AR 29.) On June 24, 2021, Plaintiff appeared with counsel and testified at a telephone hearing conducted by ALJ Michael E. Finnie. (AR 44–65.) On July 28, 2021, the ALJ denied the claim. (AR 29–38.) On August 26, 2022, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the SSA. (AR 1–5.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

# II.     THE ALJ FINDINGS

In his July 28, 2021 unfavorable decision, the ALJ included the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2. The claimant has not engaged in substantial gainful activity since August 28, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Chronic obstructive pulmonary disease (COPD), obstructive sleep apnea (OSA), and adjustment disorder (20 CFR 404.1520(c) and 416.920(c)).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than a full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) in that he is limited to simple routine task learned by rote or short demonstration with simple instructions infrequent workplace changes, lift and carry, lift and carry 20 pounds occasional, 10 pounds frequently, stand 6 hours of an 8 hour workday, sit for 6 hours of an 8 hour workday, and he should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on October 23, 1970 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from August 28, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR 29–38.)

## III. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV.    DISCUSSION AND CONCLUSIONS OF LAW

**A.    Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, the claimant is not disabled if he is engaged in substantial gainful activity\. *Id.* Second, the claimant is not disabled if he does not have a severe medically determinable impairment that meets the 12-month durational requirements. *Id.* Third, the claimant is presumed disabled if he suffers from a listed impairment, or its equivalent, for the proper duration. *Id.* Fourth, the claimant is not disabled if he can perform relevant past work based on his residual functional

4

capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1). *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

## B. The ALJ's Five-Step Evaluation of Plaintiff

In the instant case, the ALJ resolved Plaintiff's claim at step three of the five-step process. The ALJ found that Plaintiff met the first two steps – (1) he had not engaged in substantial gainful activity, and (2) his impairments of COPD, OSA, and adjustment disorder were severe[3] – but determined at step three that Plaintiff was not presumptively disabled because he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 31–33.) Nevertheless,

---

[3] The ALJ found that Plaintiff's headaches, forgetfulness, pinched nerves, and residual pain since hernia repair did not cause more than minimal limitations to Plaintiff's ability to perform work for at least twelve months and, accordingly, were non-severe impairments. (AR 32.)

5

at step four, the ALJ determined that Plaintiff had the RFC to perform less than a full range of light work with certain limitations. (AR 33–36.) Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from August 28, 2019 through July 28, 2021, the date of the decision. (AR 38.)

## C.    Plaintiff's Assertions of Error

Plaintiff sets forth three assertions of error: (1) the ALJ failed to account for Plaintiff's difficulty walking when formulating his RFC; (2) the ALJ failed to account for Plaintiff's missed work when formulating his RFC; and (3) the ALJ failed to properly consider the opinions of Plaintiff's pulmonologist Dr. Jon Freels when formulating his RFC and determining that he could adjust to other work. (Docket No. 11 at 6–12.) Accordingly, Plaintiff requests that this case be remanded for further consideration under sentence four of 42 U.S.C. § 405(g), which allows a district court to "to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

If the case contains an adequate record, "the [SSA's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court now turns to Plaintiff's assertions of error.

6

1.      **The ALJ's Consideration of Plaintiff's Walking.**

For his first assertion of error, Plaintiff argues that the ALJ failed to include any walking limitations or to consider Plaintiff's difficulties walking when formulating Plaintiff's RFC. Plaintiff also alleges that the ALJ failed to consider Plaintiff's walking difficulties when posing hypothetical questions to the vocational expert ("VE"). He asserts that this error is not harmless because the VE was not given the opportunity to opine on the existence of jobs for someone who has the same walking issues as Plaintiff.

In response, Defendant argues that the ALJ's RFC assessment that Plaintiff could perform "light work" implicitly included the ability to walk for six hours in an eight-hour workday, even if the RFC itself does not explicitly include a walking limitation. Defendant also asserts that the RFC was supported by opinion evidence, Plaintiff's conservative medical treatment, and other medical evidence. Defendant argues that the ALJ's hypothetical question to the VE was properly set forth with reasonable precision because it incorporated the same limitations as those included in the formulated RFC.

In his decision, the ALJ found that Plaintiff had the RFC to "perform less than a full range of light work" with certain limitations, which included, among others, "stand[ing] 6 hours of an 8 hour workday, sit[ting] for 6 hours of an 8 hour workday." (AR 33.) The ALJ did not include an explicit standing limitation in the RFC, but he did reference two regulations, both of which state that "light work" involves:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, *a job is in this category when it requires a good deal of walking or standing*, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

7

20 C.F.R. §§ 404.1567(b), 416.967(b) (emphasis added).[4]

To support this RFC formulation, the ALJ explicitly referenced Plaintiff's walking as it related to his COPD diagnosis. The ALJ cited emergency department records from December 2017 in which Plaintiff stated that "walking makes my SOB [shortness of breath] worse." (AR 382.) The ALJ also referenced an August 24, 2020 "6 minute exercise oximetry" test or "walk test" that was ordered by Plaintiff's pulmonologist Dr. John Freels. (AR 672.) Plaintiff walked for six minutes without stopping or pausing and was not reported to have symptoms or complaints during or after the test. (AR 531.) Dr. Freels wrote that the walk test "did not demonstrate desaturations[,] heart rate only got up to 109" and that Plaintiff "did not have hypoxemia with the last 6-minute walk test," but he did not explicitly comment on Plaintiff's ability to walk. (AR 677, 679.) In addition to the August 2020 test, Plaintiff took an earlier "walk test" in November 2018, during which he walked for six minutes without stopping or pausing and was not reported to have symptoms or complaints during or after the test. (AR 507.) The ALJ did not reference this 2018 test in his decision.

However, the ALJ did reference two non-examining physicians – Dr. Leah Umphlett and Dr. Michael Ryan – who reviewed Plaintiff's medical history and found that Plaintiff could stand and walk for six hours of an eight-hour workday. (AR 74, 94.) Dr. Ryan stated that Plaintiff could "walk[] 20 feet before resting," which appears to reference a December 2019 function report that Plaintiff had previously completed. (AR 75, 312). The ALJ found their opinions to be "consistent

---

[4] These two regulations are identical but found in different portions of the Social Security Act. *See* SSR 83–10, 1983 WL 31251 (Jan. 1, 1983) ("Glossary . . . *Exertional Level (Level of Exertion)* A work classification defining the functional requirements of work in terms of the range of the primary strength activities required. The primary strength activities specifically associated with the sedentary, light, and medium levels of exertion are set forth in sections 404.1567 and 416.967 of the regulations.") (emphasis in original).

8

with the treatment records including pulmonary function testing and radiological reports" and, therefore, "persuasive." (AR 35.)

The record contains additional references to Plaintiff's ability to walk that are not included in the decision, though most notes indicate sporadic leg pain or are silent on Plaintiff's walking. For example, and as detailed below, Plaintiff's pulmonologist Dr. Freels completed two separate medical opinions but did not assess Plaintiff's ability to walk. (AR 554, 737.) Plaintiff's primary care physician, Dr. Gavin Pinkston of The Medical Group of Columbia, noted that Plaintiff had pain in his right leg during an October 16, 2020 visit. (AR 699.) Dr. Pinkston believed that bilateral sciatica was causing the pain and prescribed prednisone. (*Id.*) Plaintiff then saw Dr. Pinkston's colleague, Dr. Richard Kennedy, for follow up visits on November 2, 2020, December 18, 2020, January 18, 2021, and March 19, 2021, but Dr. Kennedy did not mention any leg issues. (AR 683–98.) In addition, at around the same time, Dr. Mark Hinson of The Surgical Clinic – who Plaintiff saw for hernia repair surgery – wrote on December 7, 2020 and January 6, 2021 that Plaintiff had no trouble walking. (AR 714, 718.)

Plaintiff himself testified and self-reported on his walking. In an October 8, 2020 function report, Plaintiff wrote "[i]n mornings I can't hardly walk legs burn I reckon from lack of oxygen" and that he has "a hard time walking very far . . . [c]an't climb stairs because my legs feel like they are going out." (AR 326, 331.) Plaintiff also reported in that October 2020 function report that he could walk "about 30 ft." before needing to stop and rest. (AR 331.) In an earlier December 2019 function report, which Dr. Ryan referenced in his opinion, Plaintiff did not explicitly mention any issues with walking, but he did report that he could walk "about 20 ft." before needing to stop and rest. (AR 307–14.) During the June 24, 2021 hearing, Plaintiff testified in response to questions from his attorney that he had recently experienced new medical issues that were impacting his

ability to walk, though his testimony was not clear on the cause or extent of those issues. (AR 53–54.)

> Q: You said, like, even getting up and going to the bathroom or even just walking, so you also have, like, a newer condition that also affects your walking that kind of showed up later in the medical record with your legs, and I want to ask you about that because you mentioned walking. Can you tell me what's going on with your legs?
>
> A: I went to the doctor about it, and they sent me to a vascular surgeon. They said the blood pressure is good, because they was scared that I was not getting correct blood pressure to my legs, so they went back to the doctor. I have an elevated liver. . . . I have irregular blood, showing high red blood cells. At first, it was showing high white cells, and now it's showing red blood cells. And they thought that I may have a pinched nerve or a vertebra messed up in my lower back and before insurance run out, and I can't go back to follow-up on that until I get insurance.
>
> Q: Okay. So -- but the effect of that is that that is also affecting your ability to walk, correct?
>
> A: Yes. Yes, ma'am. . . . It's in between low oxygen levels or it's in between, like they said, a pinched nerve. They would have to get me to a neurologist before they could say anything else, and the insurance run out.

(*Id.*)

The ALJ relied on testimony from the VE during the administrative hearing to assist in determining whether Plaintiff could perform work in the national economy despite his impairments. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments."). The ALJ first asked the vocational expert whether there were jobs available to a hypothetical individual with all the physical limitations that ultimately comprised the RFC plus a limitation of "standing and walking for about 6 hours of an 8-hour workday." (AR 61.) The VE confirmed that there were significant jobs in the national

economy that would be available to such an individual, including garment sorter, hand packager, and laundry sorter, all of which are considered "light." (AR 60–61.)

The ALJ then posed a second hypothetical question for an individual at a "sedentary" level of exertion with added limitations, including standing and walking for two rather than six hours:

> ALJ: Let me ask you to consider the same hypothetical individual at the *sedentary level of exertion*, limited to simple, routine tasks as previously described; however, occasionally lifting and carrying ten pounds; frequently lifting and carrying less than ten pounds; *standing and walking for at least two hours of an eight-hour workday*; sitting for about six hours in an eight-hour workday with normal breaks and rest periods; capable of occasionally climbing ramps and stairs; no climbing of ladders, ropes, and scaffolds; again avoiding concentrated exposure to fumes, odors, dust, gases, environments with poor ventilation. Assuming a hypothetical individual with that residual functional capacity, that would preclude the Claimant's past work, would it not?

> VE: Yes, Your Honor, the past work would far exceed a sedentary work base.

> ALJ: Could you identify jobs such a hypothetical individual could perform prior to age 50?

> VE: Yes, Your Honor. I would begin with the job of an addressing clerk; 209.587-010. That is sedentary work. The SVP is a 2. And a national number, approximately 47,000. In addition to that, I would add the job of laminator; 690.685-258; sedentary work. The SVP is a 2. And a national number, approximately 72,000. A third job that would match your hypothetical would be a sorter; 521.687-086. It is a sedentary job, with an SVP 2, and a national number approximately 59,000. Those jobs match that second hypothetical.

(AR 62–63 (emphasis added).)

Based on these exchanges, the Court finds that the ALJ's failure to include explicit walking limitations in the formulated RFC does not constitute reversible error. The VE's testimony makes clear that Plaintiff would still be able to perform multiple types of jobs in the national economy even if he were limited to standing and walking for two hours. Plaintiff argues that the ALJ erred because the RFC makes no mention of his "tolerance for walking." (Docket No. 11 at 7–8.)

11

However, Plaintiff never indicates what that "tolerance" should be, nor does he point to any evidence in the record that would support such a "tolerance." It is not clear to the Court if Plaintiff believes that, within an eight-hour workday, he could walk for zero hours, one hour, two hours, or otherwise. Nevertheless, the two hypotheticals, which include a limitation of walking either six or two hours in an eight-hour workday, contradict Plaintiff's argument because they show that the ALJ did consider and pose a hypothetical with a greater walking limitation than the formulated RFC.[5] Further, even if Plaintiff's undefined but presumably more restrictive "tolerance for walking" had been incorporated into the RFC, Plaintiff would still not be precluded from performing sedentary work as an addressing clerk, laminator, or sorter, thus bolstering the ALJ's step five finding.

Plaintiff attempts to overcome this finding by arguing that a proper application of the Medical-Vocational Guidelines ("Grid"), 20 C.F.R. Part 404, Subpart P, Appendix 2, directs a finding of disability in his favor. (Docket No. 11 at 8.) He points to Grid Rule 201.10 and his transition from the "younger individual age 18-49" category to the "closely approaching advanced age" category upon his 50th birthday. He argues that this transition is crucial because he would be presumptively found to be disabled under the more advanced age category if the ALJ had not erred and his maximum sustained work capability had been properly limited to sedentary work rather than light work. However, as detailed above, the Court finds that the ALJ's failure to include explicit walking limitations in the formulated RFC does not constitute reversible error. Therefore, the Court finds no merit to Plaintiff's argument. *See Kingery v. Comm'r of Soc. Sec.*, 142 F.Supp.3d 598, 604 (S.D. Ohio Sept. 14, 2015) ("Plaintiff's argument rests on the premise that the

---

[5] This is assuming that the ALJ's omission of a walking limitation from the RFC indicates that Plaintiff can walk for more than six hours of an eight-hour workday.

ALJ improperly determined his RFC; specifically, that he should have been found restricted to sedentary or light work . . . If the ALJ had so erred, Plaintiff would potentially be entitled to a finding of disability under the Grid. . . . However, the Court previously found the ALJ's RFC determination supported by substantial evidence . . . and, therefore, finds no merit to Plaintiff's final alleged error.").

The Court similarly finds that the ALJ did not err in his formulation of hypotheticals to the VE. Although a hypothetical question must set forth a claimant's impairments with reasonable precision, the question need only include those impairments and limitations supported by the record. *See Winslow v. Comm'r of Soc. Sec.*, 566 Fed. Appx. 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible."). Put another way, the question must accurately portray a claimant's physical and mental impairments if the VE's testimony in response is to serve as substantial evidence that a claimant can perform other work. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 519 (6th Cir. 2010) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 329, 241 (6th Cir. 2002); *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with ALJ's assessment of the what the claimant "can and cannot do.")).

Here, the record reflects that the ALJ incorporated the functional limitations that he deemed credible and that accurately reflected Plaintiff's physical impairments; accordingly, the hypothetical questions posed by the ALJ were proper. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."); *Justice v. Comm'r of Soc. Sec. Admin.*, 515 F. App'x

583, 588 (6th Cir. 2013) ("[T]he ALJ is only required to incorporate, as part of that examination [of the VE], evidence that is deemed credible.").

For these reasons, the Court concludes that substantial evidence supports the ALJ's decision with respect to his consideration of Plaintiff's ability to walk when formulating Plaintiff's RFC. The Court therefore rejects Plaintiff's first assertion of error.

### 2. The ALJ's Consideration of Dr. John Freels's Medical Opinion, Including Plaintiff's Missed Work.

In his second and third assertions of error, which are related, Plaintiff argues that the ALJ improperly considered and explained the weight afforded to opinion evidence from Plaintiff's treating pulmonologist, Dr. John Freels, when determining Plaintiff's RFC. (Docket No. 11 at 10–12.) Plaintiff complains that the ALJ failed to account for Dr. Freels's opinion that Plaintiff would miss two or more days per month of work. Further, Plaintiff alleges that the ALJ failed to adequately discuss the consistency of Dr. Freels's two opinions as required under the regulations at 20 C.F.R. § 404.1520c.[6] (*Id.*)

When evaluating medical opinions, the presiding ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include supportability, consistency, the provider's relationship with the claimant, the provider's specialization, and other factors such as familiarity with the disability program's policies. 20

---

[6] Plaintiff references the ALJ's requirement to discuss both consistency and supportability under the regulations at 20 C.F.R. § 404.1520c, but he does not make an explicit argument that the ALJ erred by omitting a discussion of supportability. (Docket No. 11 at 10–12.) Accordingly, this Court will not examine whether the ALJ sufficiently discussed the supportability of Dr. Freels's medical opinions.

C.F.R. § 404.1520c(a)-(c).[7] Supportability and consistency are the "most important factors" in this analysis and must be explained by the ALJ, while the other facts may be explained.[8] *Id.* §§ 404.1520c(a), 404.1520c(b)(2). In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)). However, because of the "newness" of these regulations, there is a "dearth of caselaw concerning what constitutes a 'sufficient' explanation of supportability and consistency." *Terhune v. Kijakazi*, No. CV 3:21-37-KKC, 2022 WL 2910002, at *3 (E.D. Ky. July 22, 2022) (citing *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620 (S.D. Miss. Sep. 15, 2021)). Nevertheless, these regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020). The explanation does not need to be lengthy, but "the ALJ must do more than pay lip service

---

[7] This regulation changed the articulation required by ALJs when considering medical opinions. The prior regulations were interpreted to set forth a general hierarchy of medical source opinions. 20 C.F.R. § 404.1527. Although the new regulations have eliminated this hierarchy, an ALJ must still "articulate how [he/she] considered the medical opinions and how persuasive [he/she] find[s] all of the medical opinions." *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)) (cleaned up).

[8] By contrast, in assessing supportability, medical opinions and prior findings are "more persuasive" if the objective medical evidence and supporting explanations that are used to support those opinions or findings are "more relevant." 20 C.F.R. § 404.1520c(c)(1).

to the regulation without substantively engaging with the supportability and consistency of medical opinions in any detail whatsoever." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at \*5 (S.D. Miss. Aug. 11, 2021)). *See Vaughn v. Comm'r of Soc. Sec.*, No. 20-CV-1119-TMP, 2021 WL 3056108, at \*9 (W.D. Tenn. Jul. 20, 2021) (finding detailed three sentence explanation sufficient to be considered an explanation).

The ALJ must provide a "minimum level of articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at \*8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). In other words, the question is whether the ALJ's persuasiveness explanation – which includes a discussion of consistency – enables the court to undertake a "meaningful review" of the ALJ's finding as to whether the medical opinion was supported by substantial evidence. *Terhune*, 2022 WL 2910002 at \*3 (citing *Blakley*, 581 F.3d at 409; *Pearson*, 2021 WL 3708047 at \*5). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was support by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (E.D. Mich. 2021) (quoting *Vaughn*, 2021 WL 3056108 at \*11).

Several district courts in the Sixth Circuit have held that the harmless error test articulated in *Wilson*, 378 F.3d 541, which applies to violations of the treating physician rule, should also apply to an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion. *See Lorraine R. v. Comm'r of Soc. Sec. Admin.*, 2022 WL 4232839, at \*4–5 (S.D. Ohio Sept. 14, 2022); *Musolff v. Comm'r of Soc. Sec.*, No. 1:21-CV-1739, 2022 WL 1571864, at \*13 (N.D. Ohio Apr. 27, 2022) (citing cases). The

application of the *Wilson* harmless error test to an ALJ's violation of 20 C.F.R. § 404.1520c(b)(2) has been summarized as follows:

> Accordingly, an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met. *Wilson*, 378 F.3d at 547. Such an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical opinion. *Id.* at 546.

*Lorraine R.*, 2022 WL 4232839 at *5.

Here, the ALJ found that Dr. Freels's June 28, 2020 and September 5, 2020 medial opinions were not persuasive.[9] (AR 36.) These two opinions are identical questionnaires titled "Pulmonary Medical Opinion" that contain slightly different responses from Dr. Freels. (AR 552–56, 735–39.) Both opinions identify Plaintiff's diagnosis as COPD and his symptoms as "shortness of breath" and "coughing"; describe his prognosis as "good"; state that his impairments have lasted or can be expected to last at least twelve months; state that his impairments are likely to produce "good days" and "bad days"; and opine that Plaintiff would be absent from work because of his impairments an average of about two days per month. (*Id.*) In the June 2020 opinion, Dr. Freels states that Plaintiff has three to four "COPD attacks" per year and is incapacitated for three to four days during an "average attack." (AR 735.) In the September 2020 opinion, Dr. Freels did not respond

---

[9] In his decision, the ALJ cited to both medical opinions, but used the singular when discussing whether "the opinion" was persuasive. (AR 36.) The Court has assumed that the ALJ's comments with respect to "the opinion" were made with respect to both the June 2020 and September 2020 opinions from Dr. Freels.

The Court also notes that it is difficult to read the exact date of the second opinion, which may be either September 5 or September 15, 2020. (AR 556.) The Court has chosen the earlier date to be consistent with Plaintiff. (Docket No. 11 at 4 ("On September 5, 2020, Mr. Greggs' pulmonologist, Dr. Freels, completed another medical source statement . . . .").)

to those same questions about the frequency of Plaintiff's COPD attacks or the length of his incapacitation. (AR 552.)

In both opinions, Dr. Freels omitted responses to most questions within Section 10, which asked the assessor to "estimate your patient's functional limitations if your patient were placed in a competitive work situation" as a result of the patient's impairments. (AR 553–55, 736–38.) This Section specifically asked for Dr. Freels's assessment of functional limitations such as the number of city blocks Plaintiff could walk without rest or severe pain; the hours and minutes Plaintiff could sit or stand at one time; how many pounds Plaintiff could lift and carry in a work environment; and how often Plaintiff could twist, stoop, or crouch. (*Id.*) Dr. Freels did not provide his opinion on these limitations. However, in the September 2020 medical opinion, Dr. Freels wrote next to Section 10, "I only assessed by function," which may have been his explanation for not completing that Section. (AR 553.) During the hearing, Plaintiff's attorney noted that Dr. Freels was not able to "fill out" the entirety of the assessments because Plaintiff was not able to see Dr. Freels for a full examination due to the Covid-19 pandemic. (AR 58). Plaintiff agreed with that statement and agreed that Dr. Freels was able to assess Plaintiff based on seeing Plaintiff "regularly in the past for several years" and based on Plaintiff's medical records.[10] (*Id.*)

In his decision, to support his finding that Dr. Freels's opinions were not persuasive, the ALJ stated:

> Jon Freels, M.D., a treating pulmonologist, submitted a partial function report based on his treating history. He opined the claimant would be incapacitated for COPD attack 3-4 times per year for 3-4 days during each attack. He further opined the

---

[10] The administrative record indicates that Plaintiff visited Dr. Freels on March 29, 2019 (AR 500–01, 517–18), July 1, 2019 (AR 498–99, 519–20), October 1, 2019 (AR 496–97, 521–22), January 15, 2020 (AR 494–95, 523–24), June 16, 2020 (AR 490–91, 527–28), August 24, 2020 (AR 529–30), November 24, 2020 (AR 679–80), and March 17, 2021 (AR 677–78). Dr. Freels also ordered a chest scan, which occurred on July 1, 2019 (AR 502). Plaintiff may have visited Dr. Freels at other times.

18

claimant would miss 2 days per month (Exs. 8F and 16F). The undersigned finds this opinion is vague and does not offer an explanation. Furthermore, it is inconsistent insofar as the proposed affected time from COPD attack would range from 9 to 16 days annually, though even this limitations [sic] is not consistent with the claimant's treating history while medically compliant and his newly smoke free lifestyle. Therefore, the undersigned finds this opinion is not persuasive.

(AR 36.) When discussing Plaintiff's COPD, the ALJ referenced medical records from Plaintiff's visit with Dr. Freels from January 2018 (as described in later records from 2019), October 2019, January 2020, June 2020, August 2020, November 2020, and March 2021. (AR 34.)

The ALJ's brief analysis of Dr. Freels's opinions without more explanation or citation to the record does not satisfy the standards set forth under the regulations at 20 C.F.R. § 404.1520c. The ALJ found Dr. Freels's opinion to be inconsistent because: (1) Dr. Freels opined, on the one hand, that Plaintiff would miss two days of work per month due to COPD attacks, but on the other hand, that Plaintiff would experience three to four COPD attacks per year and each attack would result in Plaintiff being incapacitated for three to four days at a time or a total of nine to 16 days annually; (2) Plaintiff's treating history "while medically compliant" is incompatible with the amount of workdays that Dr. Freels believes Plaintiff would miss; and (3) Plaintiff's "newly smoke free lifestyle" is incompatible with the amount of workdays that Dr. Freels believes Plaintiff would miss. (AR 36.) Although the ALJ offers some support for his finding, his decision does not enable this Court to undertake a "meaningful review," which "frustrates" the Court's ability to determine if the ALJ's decision was supported by substantial evidence. *Terhune*, 2022 WL 2910002 at *3; *Hardy*, 554 F. Supp. 3d at 906.

First, with respect to Dr. Freels's statements on Plaintiff's work absences and number of COPD attacks, the ALJ does not explain how these two are inconsistent with one another. The Court is left to guess what the ALJ has presumed and what the ALJ means. The ALJ calls the opinions "vague" and states they "do[] not offer an explanation," but the ALJ does not articulate

19

how this vagueness or lack of explanation impacts whether the opinions are consistent with other medical record evidence. Furthermore, the ALJ does not point to specific evidence in the record that contradicts or calls into question Dr. Freels's position on Plaintiff's work absences and COPD attack days.

Next, the Court is left to guess what the ALJ is referencing when he discusses Plaintiff's treating history "while medically compliant" and Plaintiff's "newly smoke free lifestyle." The ALJ does not describe or cite any medical records in connection with either statement. Furthermore, he does not describe Plaintiff's "medically compliant" treating history at any point in his decision. He does state that Plaintiff "testified he recently quit smoking and is using the nicotine patches," but he offers no explanation of how Plaintiff's smoking cessation would render Dr. Freels's opinions less persuasive. (AR 34.) Instead, the ALJ makes these assertions without any explanation of how Plaintiff's "medically compliant" treating history or "newly smoke free lifestyle" make Dr. Freels's opinions inconsistent. The Court is left with more questions than answers. For example, are Dr. Freels's opinions inconsistent because other evidence indicates that Plaintiff would miss less work if he was "medically compliant," such as by following certain advice from his doctors? Are Dr. Freels's opinions inconsistent because other evidence indicates that Plaintiff's condition has improved from his smoking cessation, and he would therefore miss fewer days of work? As it stands, the ALJ's discussion of Dr. Freels's opinion does not allow this Court to determine if Plaintiff's disability determination was supported by substantial evidence and the Court is left to wonder how the ALJ reached his conclusion. *See Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *7–8 (N.D. Ohio June 3, 2021) (finding that the "ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion that Dr. Sprout's opinion was substantially inconsistent with the medical record").

In addition to his general argument that the ALJ "did not offer any explanation" about or "made no effort to discuss" how Dr. Freels's opinions were inconsistent, Plaintiff alleges that the ALJ improperly discounted Dr. Freels's opinion despite agreement from the VE that "a hypothetical individual who is anticipated to miss work two or more days a month on a regular, routine, and ongoing basis" would "not be able to maintain competitive work." (AR 63.) However, the VE's opinion in response to a hypothetical regarding absenteeism and its impact on maintaining competitive work is irrelevant to an initial consideration of the consistency of Dr. Freels's opinion. A VE is not called upon to testify on a claimant's medical condition, but rather to assess whether a claimant "can make an adjustment to other work" based on his RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). *See also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Accordingly, when analyzing whether the ALJ properly considered the persuasiveness of Dr. Freels's opinions, the operative question is whether Dr. Freels's opinion that Plaintiff would miss two days of work per week is consistent with other medical record evidence. The VE was not called up to offer and did not offer an opinion on the number of workdays that Plaintiff would miss because of his COPD or any other impairments. Rather, the VE offered an opinion on whether a hypothetical person could maintain competitive employment.[11]

---

[11] Plaintiff cites to an unpublished case from another circuit to support his argument that "an ALJ's failure to consider [a] vocational expert's opinion [is] in error." (Docket No. 11 at 11.) In that case, the ALJ failed to explain how a pediatrician's treatment notes were inconsistent with her opinion on the plaintiff's likely absences from work. *Danissa P. v. Comm'r of Soc. Sec.*, No. 2:19-cv-01993-BAT, 2020 WL 3264134, at *2 (W.D. Wash. Jun. 17, 2020). The court found that the ALJ failed to give legally sufficient reasons for rejecting the pediatrician's opinion. *Id.* at *4. The court then held that the ALJ's error was not harmless because a VE had testified that employers would not tolerate "even one day of work missed per month." *Id.* at *4. Contrary to Plaintiff's argument, when the *Danissa P.* court analyzed the consistency factor, it was not concerned with the ALJ's failure to consider the VE's absenteeism opinion. Rather, once the court found that the ALJ had erred, it then briefly noted that the error was not harmless because the VE

For these reasons, the Court cannot find that the ALJ appropriately weighed Dr. Freels's opinion because the ALJ failed to consider the consistency factor as required under the regulations. This failure frustrates the Court's ability to determine whether Plaintiff's disability determination was supported by substantial evidence. *See Hardy*, 554 F. Supp. 3d at 906. Accordingly, remand is required.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully RECOMMENDED that Plaintiff's motion for judgment on the administrative record (Docket No. 11) be GRANTED, the SSA's decision be REVERSED, and this matter be REMANDED to the SSA for further administrative proceedings consistent with this Report and Recommendation.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge

_____

had rendered a contradictory absenteeism opinion. *Id.* Accordingly, under that logic, the VE's opinion on Plaintiff's absenteeism in this matter is not relevant to whether the ALJ properly analyzed the consistency of Dr. Freels's opinions.

22